UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| EGON OLDENDORF (LIBERIA), INC.<br>80 Broad Street<br>Monrovia, Liberia,<br><br>      Plaintiff,<br><br>      v.<br><br>MING JADE INVESTMENTS, S.A.<br>c/o Amicorps B.V.I. Limited<br>Caracasbaaiweg 11<br>Box 6050 Curacao, Netherland Antilles,<br><br>      Defendant. | CIVIL NO.: 05-2443 |

**UNITED STATES' REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION TO SET ASIDE ORDER OF GARNISHMENT**

The Order of Garnishment In This Case Is
Issued Against and Affects CCC Property And The
<u>Corporation, And Is Therefore Precluded By Statute.</u>

The central thrust of Plaintiff's Opposition is that an order garnishing Commodity Credit Corporation ("CCC") accounts does not really garnish CCC property, because the monies will eventually be paid to a third party. The argument is flawed, however, in that garnishment, by its very nature, always concerns funds that are arguably destined for another party's accounts. More importantly, the authorities plaintiff cites concern only non-governmental commercial transactions and litigation, which are markedly different from transactions with and lawsuits against the federal government.

In this case plaintiff seeks to attach federal funds, the very nature of which is

different, for these purposes, from non-governmental funds. It is well established that the federal government retains a property interest in grant funds until they are actually disbursed for the purposes authorized. In <u>Palmiter v. Action Inc., et al</u>, 733 F.2d 1244 (7th Cir. 1984), the court rejected the argument that grant funds lose their federal character while in the hands of a grantee, and therefore held that they are not subject to garnishment to satisfy a debt of the grantee. In reaching this conclusion, the court relied upon <u>Buchanan v. Alexander</u>, 45 U.S. (4 How.) 20, 11 L.Ed. 857, and quoted from that decision as follows:

> The funds of the government are specifically appropriated to certain national objects, and if such appropriations may be diverted and defeated by State process or otherwise, the functions of the government may be suspended. So long as money remains in the hands of a disbursing officer, it is as much the money of the United States as if it had not been drawn from the treasury. Until paid over by the agency of the government to the person entitled to it, the fund cannot, in any legal sense, be considered a part of his effects.

45 U.S. at 20-21. The court in <u>Palmiter</u> concluded, therefore, that the federal government retained a "property interest" in those funds even when they were in the hands of a grantee- at least until they were paid out for their intended purpose. 733 F.2d at 1244.

Other court decisions have recognized that the government retains a property interest in the funds until the grantee actually spends the funds for authorized purposes. Courts have variously categorized this interest as an "equitable lien" stemming from the government's right to ensure that the funds are used only for authorized purposes; a "reversionary interest" <u>i.e.</u>, funds that can no longer be used for grant purposes revert to

2

the government; or as a trust. <u>In re Joliet-Will County Community Action Agency</u>, 847 F.2d 430 (7th Cir. 1988); <u>In re Southwest Citizens' Organization for Poverty Elimination</u>, 91 Bankr. 278 (Bankr. D.N.J. 1988); <u>Palmiter</u>, <u>supra</u>.

In any event, the funds at issue in the present case remain in the hands of CCC, a federal agency at the time of the garnishment order. If funds in the hands of a grantee are immune from garnishment because the government has a property interest in those funds, the same conclusion must be reached for funds remaining in the hands of the government. This was "the principle long ago established in Buchanan . . . to prevent garnishment of federal funds not yet 'paid over * * * to the person entitled to it.'" <u>Palmiter</u>, 733 F.2d at 1248.

Plaintiff's attempt to distinguish <u>Central Production Credit Assn. v. Raymond</u>, 732 F.Supp. 986 (E.D.Ark. 1990) does not help. Plaintiff argues that <u>Central Production</u> relies on the principal that garnishment is not available where the government has not consented to be sued. That is absolutely true, and is the golden thread running through all cases in which plaintiffs attempt to proceed against the United States. As alluded to above, when sovereign immunity has not been waived, the actions do not lie. "The United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit. <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941). A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.' <u>United States v. King</u>, 395 U.S. 1, 4

3

(1969)." United States v. Mitchell, 445 U.S. 535, 538 (1980).  Garnishment actions are no different.  "No legal proceeding, including garnishment, may be brought against the United States absent a waiver of its sovereign immunity." Millard v. United States, 916 F.2d 1 (Fed. Cir.1990), citing United States v. Mitchell, 445 U.S. 535, 538 (1980).  Plaintiff has not shown that the United States has waived its sovereign immunity so as to allow this garnishment.[1]

In certain circumstances, immunity has been expressly waived for carefully circumscribed types of garnishments.  As an example, we note that military wage payments are not subject to garnishment, except for child support and alimony claims.  *See* 38 U.S.C. § 5301; 42 U.S.C. § 659.  These statutes are illustrative, in that they spell out in great detail exactly what federal funds may be subject to garnishment and under what circumstances.  The CCC statute, in contrast, is broad, and simply preludes all garnishment orders against that agency.  Had Congress wished to exclude some form of garnishment or some potential payee from this broad prohibition, it could have done so.   It did not.

Here the United States has waived immunity for suit against the CCC, with reservations.  One of those reservations is that attachments and garnishments are not part

---

[1] Plaintiff attempts to distinguish between a "suit" as referenced in the CCC Charter Act (15 U.S.C. § 714b(c)) and a garnishment which it characterizes as a "judicial process" against a debtor's property. (Plaintiffs Memorandum in Opposition at 7.)  This is the classic distinction without a difference, as a suit against property in which the United States has an interest is a suit against the United States, as the District Court in Central Production Credit Association v. Raymond, 732 F. Supp. 986 (E.D. Ark. 1990) recognized, citing United States v. Bronson, 363 U.S. 237, 80 S. Ct. 1108, 4 L. Ed. 2d 1192 (1960); see also Millard, 916 F2d at 3 (garnishment is suit against garnishee United States).

4

of the arsenal of weapons that may be brought to bear against that agency. With respect, we note the Court cannot enlarge the waiver that lies in the CCC Charter Act to include what has been specifically excluded. The terms of the statute are clear; plaintiff's attempts to split those hairs should be rejected.

It is also true, as plaintiff notes, that <u>Central Production</u> is the only case interpreting the CCC Charter Act for these purposes. That fact, however, does not support plaintiff's statutory interpretation arguments – it refutes them, as the statute appears to be so clear and unequivocal that judicial examination and action have rarely, if ever, been necessary. No interpretation is necessary when a statute is plain on its face. The garnishment and attachment prohibitions for the CCC are indisputably plain on their face; those actions simply do not lie against the CCC, for any of its property in any stage of a transaction.

As noted in the United States' opening brief, the policy bases for this rule are clear and compelling, and directly apply to the circumstances in this case. The very foundation of the CCC program, created to provide foodstuffs to impoverished nations, would be eroded beyond repair if CCC were unable to ensure participants would receive payment for their efforts. If garnishment orders like the one mistakenly entered here become the norm, then claimants like plaintiff will inevitably embroil the CCC in litigation in which CCC has no interest, seeking leverage in their private disputes amongst themselves. Such a consequence would significantly diminish the vitality of the CCC's policy based food assistance programs, and should not be countenanced by this court.

## Setting Aside The Improper Garnishment In This Case Has No Impact On The General Question Of Maritime Attachments.

Plaintiff's second argument against setting aside the improper garnishment here is that doing so will somehow do violence to a general policy favoring maritime attachment. Like the first argument, this one is, at best, mistaken.

The United States agrees that attachment of a party's property is a remedy generally available in private sector maritime trade, and that it is an important remedy in as much as vessels, being mobile, are sometimes difficult to pin down. The remedy of maritime attachment, however, is obviously limited to those circumstances in which no statute prohibits such an action. Accordingly, the Suits in Admiralty Act, 46 U.S.C. §§ 741 *et seq.*, establishes that public vessels of the United States and cargo owned by the United States are not subject to arrest or attachment. 46 U.S.C. § 741. The Public Vessels Act, 46 U.S.C. §§ 781 *et seq.*, similarly provides that public vessels are not subject to maritime liens. Plaintiff argues that an "overriding" policy favoring Rule B attachments should trump the statutory prohibition against garnishment of CCC's funds. This argument, of course, flies directly in the face of all jurisprudence recognizing that the United States may circumscribe the conditions under which it will subject itself to either attachment or garnishment of its property. As above we note in this context that not one of the authorities cited by plaintiff in its "overriding policy" argument concerns public property or public vessels. While agreeing that attachment and garnishment are important remedies

in the maritime context, we note that Congress has seen fit to exclude the United States from their reach in maritime cases in general, and in the matter of CCC accounts in particular.

## Conclusion

For the reasons noted above and in the United States' opening brief, the pending Order of Garnishment should be set aside.

Dated: February 24, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

_____
PETER F. FROST
Senior Admiralty Counsel
Civil Division, Torts Branch
United States Department of Justice
P.O. Box 14271
Washington, D.C. 20044-4271
Tel:  202-616-4031
Fax:  202-616-4002
Email:  Peter.Frost@usdoj.gov

CERTIFICATE OF SERVICE

The undersigned certifies that on this 24th day of February, 2006, a copy of the foregoing Reply to Plaintiff's Opposition to Motion to Set Aside Order of Garnishment was filed electronically with the Clerk of Court, using the CM/ECF system, which sent notification of such filing to all parties and counsel in the case.

_____
Peter F. Frost